# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

MARILYNN THOMASON,

     Plaintiff,

     v.

GREGORY W. MOELLER (an
individual in his personal capacity),
DARREN B. SIMPSON (an individual in
his personal capacity), JIM JONES (an
individual in his personal capacity),
ROGER S. BURDICK (an individual in
his personal capacity), DANIEL T.
EISMAN (an individual in his personal
capacity), JOEL D. HORTON (an
individual in his personal capacity),
WARREN E. JONES (an individual in
his personal capacity), KAREN L.
LANSING (an individual in her personal
capacity), DAVID W. GRATTON (an
individual in his personal capacity),
SERGIO A. GUTIERRAZ (an individual
in his personal capacity), PITE
DUNCAN, LLP (a California, USA
Limited Liability Partnership) aka
ALDRIDGE PITE, LLP (a Georgia, USA
Limited Liability Partnership), aka
ALDRIDGE CONNORS, LLP., aka
BENEFICIAL FINANCIAL I INC),
ELISA S. MAGUNSON (as an
individual), PETER J. SALMON (as an
individual), CASPER J. RANKIN, (as an
individual), WILLIAM FORSBERG, JR.
(as an individual), ESTATE OF
COLLEEN FORSBERG, JR.,
MADISON REAL PROPERTY, LLC.,

Case No. 4:16-cv-141-BLW

**MEMORANDUM DECISION AND
ORDER**

(as an Idaho USA Limited Liability
Corporation), THOMAS LUTHY (as an
individual), LAURA LUTHY (as an
individual), ABUNDANT LAND
HOLDINGS, LLC (as an Idaho USA
Limited Liability Corporation), LANCE
SCHUSTER (as an individual), BEARD
ST. CLAIR GAFFNEY PA, (as an Idaho
USA Partnership), JOHN K. BAGLEY
(as an individual and a married man),
LUELLA BAGLEY (as an individual and
a married woman), TERRENCE
BAGLEY (as an individual and a married
man), ELIZABETH BAGLEY (a married
woman and as an individual), BAGLEY
ENTERPRISE (John Bagley, Luella
Bagley, Elizabeth Bagley and Terrence
Bagley dba in Idaho) RIVER BOTTOM,
LLP (an Idaho Limited partnership),
SHERRY ARNOLD (as an individual in
her personal capacity), TROY EVANS
(as an individual in his personal
capacity), WASHINGTON FEDERAL
SAVINGS (aka Washington Federal
savings and Loan) (as a Washington State
USA corporation), SUZANNE BAGLEY
(as an individual in her personal
capacity), LIBERTY PARK
IRRIGATION, INC. (an Idaho USA
Corporation), RIGBY ANDRUS RIGBY,
CHTD (aka RIGBY ANDRUS
MOELLER, CHTD (Chartered under
Idaho, USA), DOES 1 THROUGH 20
INCLUSIVE,

     Defendants.

## INTRODUCTION

Pending before the Court are numerous motions to dismiss for failure to state a

claim and for lack of jurisdiction, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkts. 10, 13, 23, 30, 43, 53, 64). Also pending before the court are Washington Federal Savings' Motion to Dismiss for Insufficient Service of Process (Dkt. 75), plaintiff's Motions for Default against Beneficial Financial, I, Inc. (Dkt. 43) and defendant Washington Federal (Dkt. 74), plaintiff's Motion to Strike (Dkt. 80), and plaintiff's Application for Order Directing Service by United States Marshal (Dkt. 26).

All motions are fully briefed and at issue. The Court finds that oral argument is not necessary to resolve the pending motions. As discussed below, the Court will grant defendants' respective motions to dismiss and deny those filed by plaintiff.

## BACKGROUND[1]

This case arises from multiple lawsuits filed in Idaho state court stemming from the conveyance of real property in Madison County, Idaho and related foreclosure proceedings. Having exhausted her options to appeal the state court decisions, Thomason, proceeding pro se, now brings the present action against 34 named defendants involved in those proceedings, including all Justices of the Idaho Supreme Court, three Judges of the

---

[1] Thomason's Complaint consists of 724 paragraphs spanning over 152 pages and thus fails to comply with Federal Rule of Civil Procedure 8's requirement of "short and plain" statements of the grounds for the court's jurisdiction and the claims at issue. Nor is the Complaint a model of clarity or specificity, with regard to facts or legal claims. To the extent that the factual allegations taken from the Complaint are not conclusory (and many are), the Court assumes them to be true for purposes of the Motions to Dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Where the Complaint omits facts or background necessary for understanding the relevant issues, the Court has supplemented its description with judicially noticeable materials and uncontested facts from defendants' briefs.

Thomason's Complaint twice repeats numbers within the range 110–30. *See Compl.* at 38 (skipping from ¶ 120 back to ¶ 110) and 42-43 (skipping from ¶ 130 back to ¶ 116). To avoid confusion, and to distinguish between the sets of identically numbered paragraphs, page numbers are provided for any paragraph referenced within this range.

Idaho Court of Appeals, two Idaho District Court Judges, as well as numerous parties, attorneys, and witnesses to the above-name cases.

Thomason's central allegation is that the defendants engaged in a conspiracy to deprive her of equal protection and due process, and that the above-mentioned state court judgments against her are void. Count One asserts the following civil rights claims against all defendants: 42 U.S.C. § 1983 (deprivation of civil rights); 42 U.S.C. § 1985(2)–(3) (conspiracy to interfere with civil rights and obstruction of justice); 42 U.S.C. § 1986 (refusal or neglect to prevent deprivation of civil rights). Count One also alleges a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a)–(d), and seeks recovery of attorney fees under 42 U.S.C. § 1988. Count Two alleges a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1962, against only Beneficial Financial I Inc., Aldridge Pite, LLP, Elisa S. Magnuson, Peter J. Salmon, and Casper J. Rankin. Finally, Count Three seeks to set aside the above-mentioned state court judgments under Federal Rule of Civil Procedure 60(b). The Complaint seeks monetary, declaratory, and injunctive relief.

All defendants who have acknowledged service seek dismissal. In their respective motions, defendants raise the following grounds for dismissal: *Rooker–Feldman* doctrine's jurisdictional bar, res judicata, judicial immunity, failure to state a claim upon which relief may be granted, and improper service.

## 1. Prior Litigation

The state court litigation referred to in the Complaint includes the following actions for quiet title and judicial foreclosure proceedings brought by and against Thomason, as well as subsequent appeals.

### A. *Quiet Title Action:* Bagley I

The first lawsuit was a quiet title action, filed on May 6, 2008 by Terrence Bagley and John Bagley as to property in Madison County at one time owned by Thomason and her late husband. *Bagley v. Thomason* (*Bagley I*), 241 P.3d 972 (Idaho 2010) (originally CV-2008-359). The Idaho District Court entered a partial summary judgment quieting title to the real property to the Bagleys. The Thomasons appealed the judgment, asserting *inter alia* that the Bagleys lacked standing because the deed by which they were granted title did not contain the Bagleys' complete address, as required by Idaho Code § 55–601. The Idaho Supreme Court affirmed the district court's order quieting title to real property in the Bagleys' favor, explaining that the question of whether a valid contract existed went to the merits of the claim, rather than the issue of jurisdictional standing.

### B. *Appurtenant Water Rights:* Bagley II

On January 30, 2009, the Bagleys filed a second complaint against the Thomasons, this time seeking declaratory judgment as to the water rights appurtenant to the Madison County property. *Bagley v. Thomason* (*Bagley II*), 241 P.3d 979 (Idaho 2010) (originally CV-2009-88). The Thomasons again asserted that the Bagleys lacked standing because the warranty deed failed to comply with Idaho Code § 55–601. The

District Court granted the Bagleys certain shares of water previously held by the Thomasons. On appeal, the Thomasons renewed their standing argument and also contended that the Bagleys engaged in various types of misconduct. The Idaho Supreme Court affirmed the District Court's grant of summary judgment.

### C.     *Final Appeal:* **Bagley III**

In this third appeal of the prior decisions quieting title to the Madison County property, the Thomasons alleged violations to their equal protection and due process rights, lack of jurisdiction, lack of standing, breach of contract, and various acts of misconduct, including fraud. *Bagley v. Thomason* (*Bagley III*), 307 P.3d 1219 (Idaho 2013). The Idaho Supreme Court affirmed the district court judgment and award of attorney fees. Thomason's subsequent petition for writ of certiorari was denied by the U.S. Supreme Court.

### D.     *State Partition Action:* **Madison Real Property**

On April 4, 2008, Madison Real Property ("MRP") filed a complaint for partition and accounting of a 75-acre parcel of farm land previously owned in three undivided fee simple interests by Marilynn and Byron Thomason, Nicholas and Sandra Thomason, and Greg and Diana Thomason. *Madison Real Property, LLC v. Thomason*, No. 39799, 2013 WL 6008921 (Idaho Ct. App. Aug. 12, 2013) (originally CV-2008-271). MRP is the successor in interest to William Forsberg, who received his interest in the property by a deed from Greg and Diana Thomason on October 30, 2001. Marilynn Thomason appealed the final judgment against her on plaintiff's Motion to Dismiss, asserting *inter*

*alia* that: (1) MRP lacked standing because it relied on a fraudulent deed purporting to grant interest in the property to Forsberg from Greg and Diana Thomason;[2] (2) and the district court violated her right to equal protection. The Court of Appeals of Idaho affirmed the lower's court's decision, finding that she failed to adequately demonstrate either claim. *Id.* at *8.

### E. *Tax Sale Matter:* **Abundant Land Holdings**

On April 28, 2014, Abundant Land Holdings, LLC filed a quiet title action regarding real property once owned by Thomason and her late husband that Abundant Land Holdings had obtained through tax sale. *Abundant Land Holdings, LLC v. Thomason, et al.*, No. CV-2012-520. Judgment was rendered in favor of Abundant Land Holdings.

### F. *Judicial Foreclosure Action:* **Beneficial Financial**

This final proceeding is not mentioned by Thomason but it appears to be the only basis for the second cause of action, which alleges a violation of the Fair Debt Collection Practices Act. Beneficial Financial I brought a judicial foreclosure action against Thomason, arising from default of a note and deed of trust executed by Byron T. Thomason and Marilynn Thomason and secured by the Madison County property.

---

[2] The Thomasons made the same allegations of fraud in 2007 before the bankruptcy court, which denied relief. The decision was upheld on appeal. *See Madison Real Prop., LLC v. Thomason*, No. 39799, 2013 WL 6008921, at *5 (Idaho Ct. App. Aug. 12, 2013).

*Beneficial Financial I Inc. v. Thomason, et al.*, No. CV-2015-74. This matter is still pending in state court.

## 2. Parties

To facilitate the discussion of Thomason's claims, the Court has grouped the moving defendants into seven categories: (1) Idaho District Court Judges Gregory W. Moeller and Darren B. Simpson; Idaho Appellate Court Judges Karen L. Lansing, David W. Gratton, and Sergio A. Gutierrez; and Idaho Supreme Court Justices Jim Jones, Roger S. Burdick, Daniel T. Eismann, Joel D. Horton, and Warren E. Jones (collectively "Judicial Defendants"); (2) all previous parties to the above-mentioned state court proceedings, including John Bagley, Luella Bagley, Terrence Bagley, Elizabeth Bagley, Bagley Enterprise, River Bottom, LLC, Beneficial Financial I Inc., Madison Real Property, LLC, Abundant Land Holdings, LLC, Thomas Luthy, and Laura Luthy (collectively "Financial Defendants"); (3) counsel for these parties in the state court proceedings, including Beard St. Clair Gaffney PA, Lance Schuster, Aldridge Pite, LLP, Elisa S. Magnuson, Casper J. Rankin, Peter J. Salmon, William Forsberg, and Colleen Forsberg (collectively "Attorney Defendants"); (4) Madison County employees, including Sherry Arnold, Madison County Treasurer Suzanne Bagley, a Madison County deputy sheriff, and Troy Evans, a Madison County prosecuting attorney (collectively "Madison County Defendants"); (5) Liberty Park Irrigation and its legal counsel, Rigby, Andrus, & Rigby, Chtd.; (6) Washington Federal Savings; and (7) John Doe Defendants.

# LEGAL STANDARD

### 1. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept as true, legal conclusions that are couched as factual allegations. *Id.* Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–

79.  Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief.  *Id.* at 679.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Where a plaintiff is proceeding pro se, the Court has an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. *See Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, pro se pleadings must still allege facts sufficient to allow a reviewing court to determine whether a claim has been stated. *See Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## 2.  Rule 12(b)(1) Standard

When subject matter jurisdiction is challenged pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of persuasion. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). A party who brings a Rule 12(b)(1) challenge may do so by referring to the face of the pleadings or by presenting extrinsic evidence. *See White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual . . . ."). In the former, the challenger asserts that the allegations contained in a complaint are insufficient on their face to establish federal jurisdiction. *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th

Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* In resolving a factual attack on jurisdiction, the court need not presume the truthfulness of the plaintiff's allegations, and may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Id.*

## ANALYSIS

### 1. Motions to Take Judicial Notice

As a threshold matter, the Court considers the motions to take judicial notice of the underlying Idaho state court decisions (Dkts. 32, 46), later joined by additional defendants (Dkts. 38, 39, 47, 54).[3]

Federal Rule of Evidence 201(b) provides: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The Court "may

---

[3] The Beneficial Financial defendants request that the Court take judicial notice of the following: (1) Copy of Idaho State Court Repository for Seventh Judicial District, Madison County Case number CV-2008-271; (2) Copy of Idaho State Court Repository for Seventh Judicial District, Madison County Case number CV-2008-359; (3) Copy of Idaho State Court Repository for Seventh Judicial District, Madison County Case number CV-2009-88l; (4) Copy of Idaho State Court Repository for Seventh Judicial District, Madison County Case number CV-2012-520; (5) Copy of the final appeal decision rendered on August 16, 2013, in regard to Seventh Judicial District, Madison County Case number CV-2008-359; (6) Copy of the final appeal decision rendered on August 12, 2013, in regard to Seventh Judicial District, Madison County Case number CV-2008-271.

The Abundant Land Holdings defendants request judicial notice of the following: (7) Supreme Court of the United States Docket for Marilynn Thomason v. Madison Real Property, LLC, Case No. 13-985; (8) Exhibit H: Memorandum Decision on Motion for Summary Judgment in Abundant Land Holdings, LLC v. Thomason, Madison County Case No. 2012-520; (9) Judgment and Decree entered in Abundant Land Holdings, LLC v. Thomason, Madison County Case No. 2012-520.

take judicial notice of court filings and other matters of public record," *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006), but not of a fact that is "subject to reasonable dispute," *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

The Ninth Circuit has consistently held that courts may take judicial notice of documents filed in other court proceedings to establish the fact of such litigation and face of averments made, but not to establish the truth of the matters asserted. *Compare United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) ("A federal court may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") (internal quotation and citation omitted), *with M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) ( "[A] court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it").

Here, judicial notice of the state court documents is proper. The court documents are matters of public record from sources whose accuracy cannot reasonably be questioned.[4] Additionally, these cases directly relate to the matters at issue here.

---

[4] Plaintiff also appears to object to the authenticity of the documents submitted. *Pl. Joint Denials* at ¶ 115–18, Dkt. 61. The movants' exhibits are printouts from both WestlawNext and the Idaho Court's website. Federal courts routinely notice public records obtained from government websites or other reliable internet sources, such as Westlaw, as these are sources whose accuracy cannot reasonably be (Continued)

However, the Court will take notice only for the limited purpose of recognizing the fact that certain court proceedings took place, the subject matter of that litigation, and the allegations and judicial acts recorded in them. The Court does not accept the veracity of the facts recited in those cases or correctness of these decisions. Therefore, the Motions for Judicial Notice (Dkts. 32, 46) will be granted and the Court will consider these noticed documents for the purposes of the pending Motions to Dismiss under Rule 12(b)(6). *United States v. Ritchie*, 342 F.3d 903, 907–908 (9th Cir. 2003) (A court may consider matters of judicial notice without converting the motion to dismiss into one for summary judgment).

## 2. Plaintiff's Motion for Service by U.S. Marshal and for Assertion of Jurisdiction Over Defendants' Property and Assets

Plaintiff seeks an order directing the United States Marshal to serve fifteen of the named defendants. Under Federal Rule of Civil Procedure 4, "[a]t plaintiff's request, the court may order that service be made by a United States Marshal. The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915." Fed.R.Civ.P. 4(c)(3). Plaintiff is not proceeding *in forma pauperis* and thus does not automatically qualify for that entitlement. Nor do the circumstances here suggest that appointment of the United States Marshal is appropriate here. The Advisory Committee

---

questioned. *See, e.g., U.S. v. Behmanshah*, 49 Fed. Appx. 372, 376 n. 2 (3d Cir. 2002) (taking judicial notice of a Westlaw printout); *Watson v. Brazelton*, No. 14CV2174, 2015 WL 545455, at *3 (S.D. Cal. Feb. 9, 2015) (same); *Tomaszycki v. Turkelson*, No. 15-CV-12298, 2015 WL 6605441, at *1 (E.D. Mich. Oct. 30, 2015) (same); *Hailstalk v. Antique Auto Classic Car Storage, LLC*, No. CIV.A.07-5195, 2008 WL 4192275, at *3 (D.N.J. Sept. 9, 2008) (same).

Notes state that appointment is generally proper when necessary to keep the peace, a circumstance not present here. *Adv. Comm. Note to 1993 Amendments*. Plaintiff also does not indicate that she has exhausted other reasonable methods of effective service, or that she lacks the financial resources to do so. The Court therefore declines to exercise its discretion to appoint the Marshal here.

Thomason further requests an order of the court, pursuant to Federal Rule of Civil Procedure 4(n)(1), asserting jurisdiction over the assets and properties of the above-named defendants to compensate any expenses incurred by Plaintiff in effecting service. Rule 4(n)(1) provides that "[t]he court may assert jurisdiction over property if authorized by a federal statute. Notice to claimants of the property must be given as provided in the statute or by serving a summons under this rule." Plaintiff fails to point to a federal statute which authorizes such an assertion of jurisdiction here. Accordingly the motion is denied in full.

**3.      Washington Federal's Motion to Dismiss for Insufficient Service of Process**

Defendant Washington Federal, National Association ("Washington Federal"), successor-in-interest to named defendant Washington Federal Savings, filed a Motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5), on the ground that Thomason has failed to effect sufficient service of process. (Dkt. 75).

Where a defendant challenges the method of service of process under Federal Rule of Civil Procedure 12(b)(5), the plaintiff bears the burden of establishing that service was valid under Rule 4. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). Federal Rule

of Civil Procedure 4 authorizes service upon a domestic or foreign corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h); (e)(1). In addition, Rule 4 permits service to be made in the manner prescribed by the law of Idaho, the state in which this Court sits. Fed. R. Civ. P. 4(e)(1).

The Idaho Rules of Civil Procedure similarly require a foreign corporation to "be served by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Idaho R. Civ. P. 4(d)(3)(B). However, they do allow for service by registered or certified mail "[w]hen the agent designated for service by a foreign corporation, partnership or association *which has qualified in this state by filing with the Secretary of State* or a domestic corporation, partnership or association is unavailable. . . ." Idaho R. Civ. P. 4(d)(3)(C) (emphasis added).

Here, the record demonstrates that neither Washington Federal nor its predecessor-in-interest and named defendant in this matter, Washington Federal Savings, are entities which have "qualified in [Idaho] by filing with the Secretary of State." Idaho R. Civ. P. 4(d)(3)(C). Accordingly, Idaho Rule 4(d)(3)(C) does not apply, and Thomason was required to effectuate personal service upon Washington Federal. It is uncontested that Thomason never personally served any officer or agent of Washington Federal. Rather, she mailed a copy of the summons and Complaint to Washington Federal's CEO in

Seattle, Washington. Accordingly, the Court will grant Washington Federal's Motion to Dismiss (Dkt. 75) under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process.

**4.      Plaintiff's Motion to Strike**

Thomason filed a Motion to Strike, asserting that the Affidavit of Arian Colachis (Dkt. 77), filed in support of Washington Federal's Motion to Dismiss for Insufficient Service of Process (Dkt. 75), should be stricken for lack of personal knowledge, as inadmissible hearsay, for lack of supporting specificity and/or supporting evidence, and for being untimely filed.

The Court finds the motion completely groundless. To be sure, for summary judgment purposes, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Arian Colachis' affidavit meets all these requirements. Colachis states that she is General Counsel and Corporate Secretary for Washington Federal, National Association. Ms. Colachis further states that she "has personal knowledge of the facts" testified to "from her involvement in managing the Bank's legal affairs or from a review of the Bank's files." *Colachis Aff.* at 1, Dkt. 77. She is undoubtedly competent to testify as to the matter, due to her position within the company and oversight of the Bank's legal affairs.

Moreover, the affidavit contains no inadmissible hearsay. Although Thomason never explains which portion of the affidavit she claims to be hearsay, the only plausible source is the business records reviewed by Ms. Colachis. Testimony regarding the absence of a record is excluded from the general hearsay prohibition. Fed. R. Evid. 803(7) (allowing for admission of evidence "that a matter is not included in a [business record] . . . to prove that the matter did not occur or exist [if the] record was regularly kept for a matter of that kind.").

Nor was the affidavit untimely filed. The timing requirement on which Thomason relies comes from Federal Rule of *Criminal* Procedure 47(d), which states that the "moving party must serve any supporting affidavit with the motion." The Federal Rules of Criminal Procedure do not apply to this case, and the Civil Rules contain no analogous provision.

Finally, the specificity of the affidavit is irrelevant, as Washington Federal does not bear the burden of proving insufficient service. "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). As the Court explains above, Thomason has failed to demonstrate compliance with the personal service requirement. Striking the Colachis Affidavit would not change this conclusion.

Accordingly, the Court denies Thomason's Motion to Strike (Dkt. 80).

**5.     Plaintiff's Motions for Default Judgment**

Thomason has filed a Motion for Default Against Defendant Beneficial Financial I, Inc. (Dkt. 43) and a Motion for Default Against Defendant Washington Federal (Dkt. 74). The Court finds Thomason's Motions to be without merit.

Under Federal Rule of Civil Procedure 55(b)(2), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, and the fact is made to appear by affidavit or otherwise, the clerk must enter the party's default." A Judgment of Default may, thereafter, be entered on application to the Court. *See* Fed. R. Civ. P. 55(b); *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) (noting the "two-step process" required by Rule 55: (1) request for clerk's entry of default under Rule 55(a); and (2) subsequent motion for default judgment under Rule 55(b)).

A defendant's default does not automatically entitle a plaintiff to a court-ordered judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Rather, entry of default judgment is left to the court's sound discretion, guided by the following factors: (1) potential prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the Complaint; (4) the amount at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules favoring a decision on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Here, the Court finds several procedural and substantive problems with Thomason's Motions for Default. First, Thomason has improperly asked this court to

enter a default judgment without first obtaining an entry of default by the clerk, in accordance with the requirements of Rule 55. Fed. R. Civ. P. 55. More critically, defendant Washington Federal was not properly served under Idaho or Federal law, and thus the court lacks personal jurisdiction over Washington Federal to enter default judgment.

Additionally, the harsh sanction of default against defendant Beneficial Financial, I, Inc. is not warranted here. Beneficial Financial filed its Motion to Dismiss on June 8, 2016, a mere two days after the deadline for answering the Complaint. (Dkt. 30).[5] While the Court does not condone the lack of diligent compliance with the rules of this court, the *Eitel* factors weigh strongly against the entry of default here. To begin, the Court notes the general rule that default judgments are "ordinarily disfavored" and should not be administered lightly. *Eitel*, 782 F.2d at 1472 (9th Cir. 1986). Second, the Court has serious reservations about the merits of Thomason's claims, for which she seeks damages in excess of $3 million. Finally, Thomason makes no convincing showing of prejudice resulting from the two-day delay. Although Thomason incurred additional costs in filing her Motion for Default, that Motion was prematurely filed before a Clerk's entry of

---

[5] The Complaint was served on Beneficial Financial on May 12, 2016. (Dkt. 21). The deadline for answering the Complaint would ordinarily be June 2, 2016, twenty days after service. Under Federal Rule of Civil Procedure 6(d), however, Beneficial Financial had an additional 3 days to respond, as it was served by a means other than personal service. Moving forward to the next day that is not Sunday, the true deadline for its response was Monday, June 6, 2016.

default and was submitted *after* Beneficial Financial's pre-answer Motion to Dismiss the Complaint had already been filed.

Accordingly, Thomason's Motions for Default Judgment (Dkts. 43, 74) will be denied.

**6.     Motion to Dismiss by Judicial Defendants**

The Judicial Defendants move for dismissal of the claims against them on the following grounds: (1) they have judicial immunity from a suit for damages; (2) the Anti-Injunction Act and 42 U.S.C. 1983 foreclose this Court from imposing injunctive relief; (3) there is no plausible basis for granting plaintiff declaratory relief; and (4) application of *Rooker-Feldman* doctrine. (Dkt. 23).

**A.     *Rooker-Feldman* Doctrine**

Because the *Rooker-Feldman* doctrine is jurisdictional, the Court addresses its application first. The *Rooker–Feldman* doctrine provides that federal district courts do not have jurisdiction to review final decisions of state courts or reverse or modify state court judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983). Review of such state court decisions may be conducted only by the United States Supreme Court. *See* 28 U.S.C. § 1257; *see also Exxon Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 291 (2005).

Recent Supreme Court cases have tended to emphasize the narrowness of the *Rooker–Feldman* doctrine, clarifying its scope as follows: "The *Rooker–Feldman*

doctrine . . . is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284. Such is the case "[i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Id.* at 1164.

Furthermore, "[t]o determine whether an action functions as a [prohibited] de facto appeal, we 'pay close attention to the *relief* sought by the federal-court plaintiff.'" *See Cooper v. Ramos*, 704 F.3d 772, 777–78 (9th Cir. 2012) (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003). Where the form of relief would constitute a reversal or "undoing of the prior state-court judgment," *Rooker–Feldman* directs that the lower federal courts lack jurisdiction. *Bianchi*, 334 F.3d at 900 (internal quotations and citations omitted).

At least as to the Judicial Defendants, this case presents the paradigm situation in which *Rooker–Feldman* applies. First, Thomason is asserting as a basis for relief a series of "legal errors" by the Judges presiding over the state court proceedings. Despite Thomason's attempt to frame the allegations as a larger conspiracy against her, it becomes apparent upon combing through the Complaint that the state court judgments are at the center of her claims against the Judicial Defendants.

For instance, Thomason alleges that the Judicial Defendants violated her equal protection and due process rights by: (1) acting without subject matter or personal

jurisdiction in rendering their memorandums, judgments, and orders (*Compl.* ¶¶ 113, 114

on 37, 139, Dkt. 1); (2) dismissing her counterclaims for fraud and theft "without cause"

(*Id.* ¶ 144); (3) rendering decisions "not based on the merits" (*Id.* ¶ 117 on 37); (4) failing

or refusing to act upon knowledge that her constitutional rights were being violated by

others "within judicial proceedings in their courtroom" (*Id.* ¶¶ 104, 107, 108, 113 at 39,

116 at 43, 130 at 42, 161, 162, 171, 199); (5) refusing to recuse themselves (*Id.* ¶¶ 140–

43); (6) rendering or affirming judgments "in violation of Idaho statutes, rules and their

own well standing and established authority" (*Id.* ¶ 101, 161, 165–67, 205, 239, 242–336

(listing nearly 100 legal authorities allegedly ignored)); (7) using their orders and

judgments to "further" or "aid and abet" the "illegal scheme" by the other named

defendants (*Id.* ¶ 147, 168, 209, 212); (8) and wrongly granting fees and costs against her

(*Id.* ¶ 156, Dkt. 1). Thomason also states expressly that the "discriminations and scheme

were based and facilitated *under judicial actions* in Madison County. *Id.* ¶ 94 (listing

cases) (emphasis added). The broader conspiracy allegation is merely a fig leaf:

Thomason's central disagreement is with the state courts' resolution of the legal issues

before them.

Second, the requested relief effectively seeks to "undo" the state court's

application of the law and judgments against her—either through an award of damages,

equivalent to the value of the property seized, or through a declaration seeking to have

such property returned to her. *Id.* ¶ 88 (seeking damages in the amounts of $2,821,745.67

and $389.263.12, equivalent to the value of real and person property taken in execution

of the judgments against her). Thomason seeks a "declaratory judgment for the immediate return of all Plaintiffs real and personal property" taken in execution of the above-mentioned judgments. *Id.* ¶ 700. Thomason's requested relief therefore depends on a determination that the state courts committed legal error, in rendering judgments or quieting title against her, and would require this Court to scrutinize the state courts' application of governing law and procedure. This is precisely the type of *de facto* appeal prohibited by the *Rooker-Feldman* doctrine.

In sum, Thomason's claims against the Judicial Defendants assert legal wrongs by the state courts and seeks to overturn the outcomes of those actions. Accordingly, the Court finds that *Rooker-Feldman* applies and this Court is without jurisdiction to provide the relief sought against the Judicial Defendants.

### B. *Judicial Immunity from Suit for Monetary Damages*

Even if the *Rooker-Feldman* doctrine did not strip the court of jurisdiction to hear Thomason's damages claims against the Judicial Defendants, these must be dismissed on the basis of judicial immunity.[6]

Judges are absolutely immune from a suit for monetary damages arising from their judicial acts. *Mireles v. Waco*, 502 U.S. 9 (1991); *see also Forrester v. White*, 484 U.S.

---

[6] Thomason's request for injunctive relief against the Judicial Defendants, under section 1983, is also barred on alternative grounds. Section 1983 itself provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Thomason has not alleged that a declaratory decree was violated or that declaratory relief is unavailable, and the injunctive relief sought by Thomason does not address the actions of the Judicial Defendants other than in their judicial capacity.

219, 225–27 (1988). "Judicial immunity applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986). "Nor is judicial immunity lost by allegations that a judge conspired with one party to rule against another party." *Moore v. Brewster*, 96 F.3d 1240, 1243 (9th Cir. 1996) (superseded on other grounds) (internal citation omitted).

Two narrow limitations restrict the scope of judicial immunity: first, where the judge acted in the "clear absence of all jurisdiction," *Stump v. Sparkman*, 435 U.S. 349 (1978), and second, where the judge's actions are not taken in his judicial capacity, *Forrester v. White*, 484 U.S. 219, 227 (1988).

Neither exception can be argued credibly here. First, the acts that Thomason challenges were clearly taken in a judicial nature. They took place during state court proceedings and involved normal judicial functions, such as interpretation of legal precedent and issuance of written opinions. For example, Thomason alleges that the Judicial Defendants "were in violation of Idaho statutes, rules and their own well standing and established authority" and "chose to have her/his opinions and decision [sic] used to aid and abet [other named defendants] in prevailing in [the state court] cases." *Compl.* at ¶¶ 101, 675. Thomason's Complaint contains no factual allegations against these defendants that are not judicial in nature.

Second, there was no "clear absence of all jurisdiction" in the Idaho courts to consider the various claims brought against Thomason. A distinction must be made

between mere "excess of jurisdiction" and the "clear absence of all jurisdiction." The

Supreme Court in *Bradley v. Fisher* described it as such:

> Where there is clearly no jurisdiction over the subject-matter any authority
> exercised is a usurped authority . . . . But where jurisdiction over the subject-
> matter is invested by law in the judge, or in the court which he holds, the manner
> and extent in which the jurisdiction shall be exercised are generally as much
> questions for his determination as any other questions involved in the case . . . ."

80 U.S. 335, 351–52 (1871). *See also Crooks v. Maynard*, 913 F.2d 699, 701 (9th Cir.

1990) (holding that a judge did not act in clear absence of all jurisdiction where he had

"colorable authority" to take the action in question).

The Supreme Court further illustrated the distinction with an example:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a
> criminal case, he would be acting in the clear absence of jurisdiction and would
> not be immune from liability for his action; on the other hand, if a judge or a
> criminal court should convict a defendant of a nonexistent crime, he would merely
> be acting in excess of his jurisdiction and would be immune.

*Stump v. Sparkman*, 435 U.S. 349, 357 n. 7 (1978) (citing *Bradley*, 80 U.S. at 351).

Thomason contends that the Judicial Defendants acted without subject matter

jurisdiction because the plaintiffs in those proceedings lacked standing, due to the alleged

invalidity of the underlying contract under Idaho Code § 55–601. At most, what

Thomason alleges is acts "in excess of" jurisdiction, not acts "in the clear absence of" all

jurisdiction. There is no allegation that the Idaho District Courts are not empowered to

hear, as a general matter, the type of actions in which Thomason was involved. *See*

*Stump*, 435 U.S. at 357. Idaho District Courts are courts of general jurisdiction

empowered to hear civil matters of contract law or property disputes. *See* Idaho Const.

art. V §20, Idaho Code § 7-1102 (2011 through Reg. Sess.). The Idaho Supreme Court has jurisdiction to review on appeal any district court decision, Idaho Const. art. V, § 9, and the Idaho Court of Appeals has jurisdiction to hear any appeal assigned to it by the Idaho Supreme Court. Idaho Code § 1-2406. Thus, there is no basis for concluding that the Judicial Defendants were acting in "complete absence of jurisdiction," even if Thomason is correct that the state court plaintiffs lacked standing, and that the courts acted in excess of their subject matter jurisdiction.

Accordingly, Thomason's damages claims against the Judicial Defendants must also be dismissed on the basis of judicial immunity.

**7.     Motions to Dismiss by Financial, Attorney, and County Defendants**

Given the similarity of issues presented, the Court will jointly address the five motions to dismiss filed by the Financial Defendants, Attorney Defendants, and County Defendants. (Dkts. 10, 13, 30, 44, 53).

**A.     Count One – Civil Rights and RICO Claims**

Count One of Thomason's Complaint alleges several civil rights claims, under 42 U.S.C. §§ 1983, 1985, 1986, 1988, along with a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (a–d). Defendants raise the following grounds for dismissal: (a) lack of subject matter jurisdiction under *Rooker-Feldman*; (b) claim and issue preclusion; and (c) failure to state a claim upon which relief can be granted. As to these remaining defendants, we conclude that *Rooker-Feldman* does not entirely preclude our review, but that the alternative grounds for dismissal—

failure to state a claim and res judicata—independently bar Thomason's claims against these defendants.

## 1. *Rooker-Feldman* Doctrine Does Not Apply

As stated above, "the *Rooker–Feldman* doctrine . . . is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 284 (2005). A district court is not barred from exercising subject matter jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon*, 544 U.S. at 293.

The Ninth Circuit has further clarified that "where the federal plaintiff does not complain of a legal injury caused by a state court judgment, but rather of a legal injury caused by an adverse party, *Rooker–Feldman* does not bar jurisdiction." *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003). An injury is not caused by a state-court judgment where the judgment of a state court "simply ratified, acquiesced in, or left unpunished" the actions of a third party. *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005). Rather, the federal plaintiff may be precluded from relitigating such a dispute under state preclusion rules. *Noel*, 341 F.3d at 1164; *Exxon Mobil*, 544 U.S. at 293.

Upon first glance, the claims here might appear to come within the *Rooker–Feldman* doctrine, for the same reasons presented above. In contrast to the claims against the Judicial Defendants, however, Thomason alleges independent acts of misconduct

against these parties, which do not depend on the validity of the state court orders, or seek to overturn them.

For instance, Thomason alleges that these defendants laundered real property deeds (*Compl.* ¶ 123 at 40, Dkt. 1); forged a promissory note and deed (*Id.* ¶ 189); submitted fraudulent documents to the Court (*Id.* ¶¶ 191, 193); illegally confiscated certain farm equipment, vehicles, and other personal property (*Id.* ¶ 202); set fire to her land (*Id.* 229); attempted to force Thomason and her son off a county road (*Id.* 230); made personal threats to her family (*Id.* ¶ 233); mailed a "fraudulent 'notice of default'" (*Id.* ¶ 233; 381); altered, destroyed, and concealed tax records (*Id.* ¶ 367; 379); filed fraudulent affidavits (*Id.* ¶ 368); increased Thomason's monthly loan payments, in violation of her contract (*Id*. ¶ 392); and buried and concealed evidence (*Id.* ¶ 396).

These allegations focus on the independent wrongs of the defendants, not the state courts themselves. Nor do they necessarily seek review and reversal of the state-court judgments. Even if the state court orders were valid, the actions taken by the non-judicial defendants before and during those proceedings may have been improper. In other words, the "legal wrong that [plaintiff] asserts [here] is not an erroneous decision by the state court . . . [but instead] 'an allegedly illegal act . . . by an adverse party.'" *Maldonado v. Harris*, 370 F.3d 945, 950 (9th Cir. 2004) (quoting *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003)); *see also Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141 (9th Cir. 2004) ("Rooker–Feldman . . . does not bar subject matter jurisdiction when a federal plaintiff

alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud.").[7]

Furthermore, even if these allegations were raised in state court, or overlap with the subject matter of the state court actions, *Rooker-Feldman* does not deprive this Court of jurisdiction. *See Exxon Mobil*, 544 U.S. at 293 (emphasizing that *Rooker-Feldman* is not applicable "simply because a party attempts to litigate in federal court a matter previously litigated in state court."); *see also Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141 (9th Cir. 2004) ("[E]ven though Kougasian's remaining four causes of action are essentially identical to the causes of action already adjudicated in *Kougasian I* and/or *II*, *Rooker–Feldman* does not bar Kougasian's federal suit on those causes of action.")

Having concluded that the *Rooker-Feldman* doctrine does not Thomason's claims against the non-Judicial parties, the Court proceeds to the moving defendants' remaining arguments.

---

[7] This conclusion is in accord with numerous cases from other Circuits, finding that *Rooker-Feldman* does not bar allegations of fraud or conspiracy in connection with mortgage foreclosure actions in state court. *See, e.g., Babb v. Capitalsource, Inc.*, 588 F. App'x 66, 68 (2d Cir. 2015) (finding that plaintiff's suit, which sought compensation for defendants' alleged fraud in procuring foreclosure "[wa]s not barred by Rooker-Feldman because the Complaint seeks damages for injuries suffered as a result of defendants' alleged fraud and does not attempt to reverse or undo a state court judgment"); *McCormick v. Braverman*, 451 F.3d 382, 392 (6th Cir. 2006) ("None of these claims assert an injury caused by the state court judgments; plaintiff does not claim that the state court judgments themselves are unconstitutional or in violation of federal law. Instead, plaintiff asserts independent claims that those state court judgments were procured by certain defendants through fraud, misrepresentation, or other improper means. . . . [The fact that] these claims may deny a legal conclusion of the state court . . . does not lead to a divestment of subject matter jurisdiction in the federal courts."); *see also Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995) (Rooker–Feldman doctrine did not preclude the district court from exercising jurisdiction over a § 1983 claim alleging a conspiracy between the opposing party's lawyers and the judges at the different stages of the state court litigation, even though plaintiff would have to show that the state court judgment was erroneous.").

## 2.    Res Judicata applies as to the Attorney, Financial Defendants

Although not barred by *Rooker–Feldman*, Thomason may be precluded from relitigating her claims under ordinary res judicata principles.

When determining the preclusive effect of a state court judgment, federal courts must "give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986) (citing Full Faith and Credit Act, 28 U.S.C. § 1738). Under Idaho law, claim preclusion, or true res judicata, applies where the following elements are met: (1) the present claim involves the same parties as the original action, or their privies; (2) the present claim arises out of the same transaction or series of transactions as the original action, such that identical claims were raised or could have been raised; and (3) the original action ended in a final judgment on the merits. *Berkshire Investments, LLC v. Taylor*, 278 P.3d 943, 951 (Idaho 2012).

The County Defendants were not parties or privies to the state court proceedings, and thus the claims against them are not precluded under res judicata principles. However, the elements of claim preclusion are established as to the Attorney and financial Defendants.

First, the present claim arises out of the same series of transactions as the original action, i.e., the mortgage, the default, the foreclosure, other events leading up to the state court litigation itself. Thomason has not alleged any new grounds for suit or facts that have occurred since the expiration of the former state court suits.

Second, the Financial and Attorney Defendants were all parties or in privity with the parties to the previous actions. John Bagley, Luella Bagley, Terrence Bagley, Elizabeth Bagley, Beneficial Financial I Inc., Madison Real Property, and Abundant Land Holdings, LLC were parties to the state court cases. There is "substantial identity" and sufficient commonality of interest between these named parties and Thomas Luthy and Laura Luthy, who are the owners of Abundant Land Holdings, as well as Bagley Enterprise and River Bottom LLP, two entities owned by the named Bagley defendants. *See generally In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir.1983) (holding that even when the parties are not identical, privity may exist if "there is 'substantial identity' between parties, that is, when there is sufficient commonality of interest.").

Likewise, the Attorney defendants were in privity with their clients. While privity does not automatically exist with respect to every attorney-client interaction, *Weinberger v. Tucker*, 510 F.3d 486, 493 (4th Cir. 2007), when law firm defendants appears in a subsequent action "by virtue of their activities as representatives" of a party in a prior action, privity exists. *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1169 (10th Cir. 2000); *see also Berkshire Investments, LLC v. Taylor*, 278 P.3d 943, 951 (Idaho 2012) (finding that for purposes of *res judicata,* attorney was in privity with the client he represented in the prior action). Because the Attorney Defendants appear in this action solely by virtue of their representation of the named parties in the underlying state proceedings, they are privies for the purposes of res judicata.

Third, and finally, there was a final judgment on the merits on these claims. Thomason's allegations of fraud and other misconduct, to the extent that they can be deciphered, were all raised and rejected in the various state court proceedings, as evidenced from the judicially noticed documents and Thomason's Complaint.

For instance, Thomason's allegations that BSG and Bagleys forged promissory notes and other documents were raised in *Bagley I*, where Thomason counterclaimed for "duress, breach of contract, threats, and unjust enrichment." *Bagley I*, 241 P.3d 972, 976 (Idaho 2010); *see also Compl.* ¶¶ 185, 189, 193. The *Bagley I & III* courts dismissed these claims after finding that Thomason provided no factual support. *Bagley I*, 241 P.3d at 976; *Bagley III*, 307 P.3d 1219, 1224 (Idaho 2013). Thomason's allegations of fraud against the Forsbergs were also raised and dismissed as a basis for relief in prior proceedings. *See Madison Real Prop., LLC v. Thomason*, No. 39799, 2013 WL 6008921, at *1 and n.2 (Idaho Ct. App. Aug. 12, 2013). Her claims regarding fraudulent tax payments were also raised and dismissed by the court in the quiet title action, *Abundant Land Holdings, LLC v. Thomason, et al.*, No. CV-2012-520. Thomason also raised equal protection challenges in these cases, which the Idaho courts rejected as unsubstantiated by any evidence. *See Bagley I*, 241 P.3d 972, 976 (Idaho 2010); *Bagley III*, 307 P.3d at 1224; *Madison Real Property, LLC v. Thomason*, No. 39799, 2013 WL 6008921 (Ct. App. Aug. 12, 2013). Each of these state court decisions constituted a final adjudication on the merits with full res judicata effect. *See* I.R.C.P. 41; *Makin v. Liddle*, 696 P.2d 918, 919 (Idaho Ct. App. 1985).

Thomason asserts, unconvincingly, that "Claim preclusion 'is not applicable to the litigation of previous counterclaim [sic]." Dkt. 40, ¶ 16; Dkt. 61, ¶ 90 (*quoting Joseph v. Darrar*, 472 P.2d 328, 332 (Idaho 1970)). *Joseph v. Darrar* dealt with the application of claim preclusion to counterclaims *not previously asserted*, and thus does not stand for the proposition that counterclaims are never barred by res judicata principles. *Id.* Furthermore, that case merely asserts that the preclusion of counterclaims is governed instead by I.R.C.P. 13. *Id.*

I.R.C.P. 13(a) deals with compulsory counterclaims and provides, with exceptions not relevant here, that "[a] pleading must state as a counterclaim any claim that, at the time of its service, the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." I.R.C.P. 13(b) deals with permissive counterclaims and declares that "A pleading may state as a counterclaim against an opposing party any claim that is not compulsory."

While not squarely attributed to the operation of res judicata principles, Idaho law is clear that "a compulsory counterclaim which is not raised in an action cannot subsequently be pleaded in a section action." *Joseph*, 472 P.2d at 331 (Idaho 1970). Furthermore, "when the party brings and pursues . . . a [permissive counterclaim] to a conclusion, res judicata applies" to bar re-litigation of that claim. *Kootenai Electric Cooperative, Inc. v. Lamar Corporation*, 219 P.3d 440, 446 (Idaho 2009).

Here, there is little doubt that the allegations of misconduct against the defendants—including fraud, theft, suppression of evidence, false testimony, threats, and bias—arise out of precisely the same "transaction or occurrence" at issue in the underlying state court proceedings and were therefore compulsory counterclaims. Accordingly, to the extent that these claims were not raised in the state court actions, I.R.C.P. 13(a) forecloses their assertion now.

Therefore, Thomason's Count One claims against the Financial and Attorney Defendants are barred by the application of res judicata and I.R.C.P. 13.

### 3. Failure to State a Claim as to All Defendants

The Court also finds that Count One must be dismissed as to all defendants because Thomason has failed to state a claim. While filled with labels and legal conclusions, Thomason's Complaint ultimately lacks sufficient factual content to permit the Court to reasonably infer that defendants are liable for any of the civil rights or RICO violations asserted.

### (a) 42 U.S.C. § 1983: Violations of Constitutional Rights

A plaintiff asserting a claim under section 1983 must demonstrate that (1) the action occurred "under color of state law," and (2) the action resulted in the deprivation of a constitutional or federal statutory right. *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988) (internal citations omitted). Plaintiff fails on both counts.

First, Thomason's claims against the non-governmental defendants fail to meet the state action requirement. *West v. Atkins*, 487 U.S. 42, 48 (1988). Liability would attach if

the private parties conspired with a state actor, *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980), but the vague allegations of a conspiracy with County officials and the state judiciary do not satisfy the plausibility standard of Rule 12(b)(6). *See Iqbal*, 556 U.S. at 677.

Second, Thomason fails to adequately allege a constitutional deprivation by the County Defendants. As best the Court can tell, Thomason's equal protection claim attempts to invoke the so-called "class-of-one" theory. To succeed on her class-of-one claim, she must allege that the defendants (1) intentionally, (2) treated her differently than other similarly situated property owners, (3) without a rational basis. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008). Here, Thomason has made no allegations that she was treated differently than similarly situated property owners throughout these legal challenges, or that the County Defendants lacked a rational basis for their actions.

Thomason also fails to properly advance a due process claim.[8] A claim alleging the denial of procedural due process requires proof of two elements: (1) a deprivation of a constitutionally-protected liberty or property interest; and (2) constitutionally-inadequate process. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-41 (1985). Furthermore, "an unauthorized intentional deprivation of property by a state employee

---

[8] Thomason does not appear to allege that the actions of the County Defendants constituted a denial of *substantive* due process. Indeed, actions involving a deprivation of real property rights are more properly challenged under the takings clause. *Macri v. King Cty.*, 126 F.3d 1125, 1128 (9th Cir. 1997), *as amended on denial of reh'g and reh'g en banc* (Sept. 17, 1997).

does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Here, Thomason fails to allege how the procedures employed by the County Defendants were defective or otherwise denied her a constitutionally adequate process. Thomason was provided notice and full hearing before the State authorized the taking of her property. Furthermore, state common-law and constitutional remedies provide Thomason an adequate post-deprivation remedy for the alleged misconduct by the County Officials. Thus, Thomason fails to sufficiently allege a due process claim against the County Defendants.

Accordingly, the Court dismisses Plaintiff's Section 1983 claims.

### (b)     42 U.S.C. §§ 1985(2): Conspiracy to Obstruct Justice

A conspiracy claim under 42 U.S.C. § 1985 for conspiracy to interfere with civil rights is not limited in its application to conspiracies involving state action. *See Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998). Nonetheless, Thomason fares no better in pleading this claim.

Section 1985(2) is aimed at the right of participation in judicial proceedings. The first clause of 1985(2) proscribes conspiracies to interfere with the administration of justice in federal court. Because Thomason has not identified any federal proceeding connected with her claims, she fails to state a cause of action under this clause.

The second clause applies to conspiracies in state court. The elements of such a violation are: (1) conspiracy; (2) to impede due process or injury a person's property for

attempting to enforce a right; (3) motivated by class-based, invidious animus; and (4) injury to the plaintiff. 42 U.S.C. § 1985(2); *see also Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 763 (9th Cir. 1991) ("[a] cognizable claim under [the second part of § 1985(2)] requires an allegation of a class-based, invidiously discriminatory animus.") (internal citation and quotations omitted).

The first element, a conspiracy, requires the conspiring parties to have "reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999), as amended on denial of reh'g (July 15, 1999). Although Thomason characterizes the actions of the defendants as a "conspiracy," there are no facts pled to support a "meeting of the minds" or "common design." Independent allegations of wrongdoing, standing alone, will not suffice. Nor will conclusory allegations that "Defendants acted jointly with concerted actions." *Compl.* 415; *see Iqbal*, 556 U.S. at 679 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 929 (9th Cir. 2004) (dismissal of section 1985(2) claim proper where plaintiff failed to "state specific facts to support the existence of the claimed conspiracy.")

Thomason also fails to allege any facts to demonstrate that defendants' actions were motivated by class-based, invidious animus. Mere conclusory allegations that the defendants discriminated against her on account of "gender, race and/or age" are insufficient to demonstrate such a motive. *Compl.* ¶ 7, Dkt. 1.

Accordingly, Thomason's allegations are insufficient to state a § 1985(2) conspiracy.

### (c) 42 U.S.C. §§ 1985(3): Conspiracy to Interfere with Equal Protection

Thomason's section 1985(3) claim likewise fails. To prove a claim under section 1985(3), a plaintiff must show: (1) there was a conspiracy; (2) the conspiracy was undertaken to directly or indirectly to deprive her of equal protection of the law or equal privileges and immunities under the law; (3) an act in furtherance of the conspiracy; and (4) a personal or property right injury or deprivation of a right of privilege as a result of the act. *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–29 (1983); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). The alleged conspiracy must also be motivated by "some racial, or perhaps otherwise class-based, invidious [] discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).[9]

Additionally, in Section 1985(3) claims against private actors rather than government actors, the plaintiff must allege that the conspiracy was directed at rights that are constitutionally protected from private encroachment. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993). The Supreme Court has recognized only two constitutional rights sufficiently serious to protect against private

---

[9] The Court is unaware of any legal precedent supporting application of Section 1985(3) to discrimination against a "class of one."

encroachment: the right against involuntary servitude and the right to interstate travel. *See id.* at 278.

Here, Thomason fails to state a section 1985(3) claim against the non-governmental defendants, as the Complaint does not implicate either of the two constitutional rights protected from private encroachment. Furthermore, the Complaint utterly fails to demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights, as necessary to demonstrate the claimed conspiracy. *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999). Nor does Thomason allege any facts plausibly suggesting that defendants were animated by "class-based, invidiously discriminatory animus" toward her. *Sever.*, 978 F.2d at 1537–38. Thus, the Section 1985(3) claims must also be dismissed.

### (d)      42 U.S.C. §§ 1986: Neglect to Prevent Obstruction of Justice

Section 1986 creates liability for the negligent failure to prevent a violation of Section 1985. Therefore, liability under Section 1986 is predicated on a colorable claim under Section 1985. 42 U.S.C. § 1986 (providing that liability "for all damages caused by such wrongful act" will be imposed "if such wrongful act be committed"). Because Thomason has failed to plead a cause of action under the latter provision, she has failed to plead a cause of action under the former.

### (e)      18 U.S.C. § 1962: Racketeer Influenced and Corrupt Organizations ("RICO")

To establish a RICO violation, Thomason must plead four elements: (1) conduct; (2) of an enterprise that affects interstate commerce; (3) through a pattern; (4) of racketeering activity or collection of unlawful debt. *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). "To show the existence of an enterprise under the second element, plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Id.* (citing Boyle v. United States, 556 U.S. 938, 946 (2009)).

Thomason has not alleged any facts plausibly suggesting the existence of a "common purpose" or "structure" connecting the defendants, and thus fails to establish the existence of an enterprise. Conclusory allegations of a conspiracy are insufficient to survive a Rule 12(b)(6) motion on this claim.

### B.    Count Two – Fair Debt Collection Practices Act, 15 U.S.C. § 1962

Thomason's second cause of action alleges that defendants Beneficial Financial I, Inc., Aldridge Pite, LLP, Elisa S. Magnuson, Peter J. Salmon, Casper J. Rankin, and Washington Federal Savings violated the Fair Debt Collection Practices Act (FDCPA) and lacked standing to foreclose on Thomason's property. This claim appears to arise out of the foreclosure proceedings now pending in the State of Idaho, under case number CV-2015-74.

Mortgage companies collecting debts do not qualify as "debt collectors" under the Fair Debt Collection Practices Act, as long as the debt was not in default when acquired. *See* 15 U.S.C. § 1692a(6)(F)(iii) ("The term [debt collector] does not include . . . any

person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (ii) concerns a debt which was originated by such person . . . [or] (iii) concerns a debt which was not in default at the time it was obtained by such person."); *see also Cherian v. Countywide Home Loans, Inc.*, No. 1:12-CV-00110-BLW, 2012 WL 2865979, at *4 (D. Idaho July 11, 2012) (foreclosure does not qualify as the "collection of a debt" within the meaning of the FDCPA).

Here, Thomason simply alleges that Beneficial Financial, Washington Federal Savings, and others are "debt collectors" but provides no factual allegations about their involvement in the foreclosure action, who originated the underlying mortgage, whether the mortgage was ever transferred, or whether the debt was acquired by these entities while it was in default. Accordingly, Thomason fails to plausibly allege that any of the defendants are "debt collectors" as that term is defined by the FDCPA, and this claim must be dismissed under Rule 12(b)(6).

### C. Count Three – the Collateral Attack under Rule 60(b)

Thomason also seeks relief under Federal Rule of Civil Procedure 60(b) from the above-mentioned state court proceedings, on the grounds that the "orders, judgements, decisions and memorandums" of these proceedings were "fraudulent and/or void." *Compl.* at ¶ 69 –702. Federal Rule of Civil Procedure 60 provides narrow grounds for relief from the federal district court's own order or judgment. A state-court action is not subject to being modified or set aside under the Federal Rules. *See, e.g., de Mol v. Grand Canyon Title Agency*, 2010 WL 4269534, at *1 (D. Ariz. Oct. 25, 2010) ("Rule 60(b)

applies only to federal court judgments and not to state court proceedings") (citations and internal quotation marks omitted). Here, Thomason improperly seeks relief from a state court judgment, not a judgment of this Court. Therefore, Count Three fails as a matter of law.

**8.      Motion to Dismiss by Liberty Park Defendants**

Liberty Park Irrigation, Inc. and Rigby, Andrus, and Rigby, Chtd. filed a Motion to Dismiss (Dkt. 64) incorporating the arguments presented by the other defendants and arguing that no cause of action was alleged against Liberty Park or Rigby, Andrus Thomason, in response, takes the peculiar position that Liberty Park is not a defendant in this case and accuses Rigby, Andrus of attempting to "improperly join a non-party" by filing a Motion to Dismiss on behalf of Liberty Park and itself.

To begin, therefore, the Court must clarify that as of the date of this Order, Liberty Park Irrigation, Inc., remains a defendant in this lawsuit. Failure to timely serve a complaint on a named defendant does not automatically dismiss that party from the complaint. It merely serves as grounds for dismissal by the Court.[10] The Federal Rules of Civil Procedure provide only two options for dismissing a named defendant without a court order: filing "(i) a notice of dismissal before the opposing party serves either an

---

[10] Federal Rule of Civil Procedure 4(m) provides that "if a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." However, the Court must extend the time for service if a plaintiff shows good cause for the failure, and has discretion to do so upon a showing of excusable neglect. *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009).

answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A).

Thomason's assertions in her Amended Status of Service Report (Dkt. 68) that "[a]ll named defendants . . . which Plaintiff has concluded are necessary to be sued to effectuate justice and full relief, have been duly and timely served" did not serve as a proper notice of dismissal. As of the date of this Order, therefore, Liberty Park Irrigation, Inc., remains a defendant in this lawsuit.

The Court nonetheless agrees that Liberty Park should be dismissed due to Thomason's failure to timely serve process. The Complaint in this matter was filed on April 5, 2016, and Liberty Park has yet to be served. Since service was effected outside the 120 day window, the Complaint must be dismissed without prejudice, pursuant to Rule 12(b)(5), for insufficient service of process.

Furthermore, the Court agrees that the Complaint is completely devoid of any factual allegations sufficient to maintain a cause of action against Rigby, Andrus, for the reasons identified in Section 7(A)(3) above. The only allegations against Rigby, Andrus appear in paragraph 143 of the Complaint, in which Thomason alleges that Rigby, Andrus "chose to aid and abet by remaining silent" and knew that Thomason did not own shares in Liberty Park. No other allegations against these defendants appear in the Complaint. These conclusory allegations fail to state a plausible claim for relief under any count.

Accordingly, all claims against Liberty Park Irrigation, Inc. and Rigby, Andrus, and Rigby, Chtd. will be dismissed.

## 9.     John Doe Defendants

Thomason also names "John Does 1 through 20" as defendants. The Complaint makes no allegations of any conduct by unidentified parties and thus will be dismissed as to these defendants.

## 10.     Nature of Legal Arguments and Contentions

As a final note, the Court feels compelled to address the abusive and unnecessarily adversarial comments directed by Thomason toward the opposing counsel and parties. Thomason's filings are filled with unfounded accusations regarding counsel's "fraudulent statements," "intent to deceive and abuse," "willful and malicious intent," "perjury," "abuses" of the system, and "deliberate misrepresentations" to this Court. *See, e.g.*, Dkt. 40, ¶¶ 25, 35, 44, 45; Dkt. 62, ¶ 5; Dkt. 71, ¶¶ 7, 10; Dkt. ¶ 3.

Thomason also wrongly accuses the defendants of numerous violations of the Federal Rules of Civil Procedure. As just one example, she chastises counsel for "failing to comply with the most basic rules of this court, F.R.C.P., Rule 10(b) [that] 'a party must state its . . . defenses in numbered paragraph' . . . evidencing to this court . . . [their] recalcitrant and flippant regards for this court and to the rules established by the Judicial Branch of the United States." Dkt. 40, ¶ 5. Thomason is simply incorrect. Rule 10 applies only to the pleadings, and not to other filings. There is no such requirement that ordinary motions be composed in numbered paragraphs, nor does the Court find any merit in

Thomason's assertion that the defendants have shown "recalcitrant and flippant regards" for the rules of this Court.

Zealousness in pursuing one's case does not, under any circumstances, require inflammatory or disparaging rhetoric. Thomason's remarks are unhelpful and not well taken by this Court.

**11.    Leave to Amend**

It appears that Thomason has requested leave to amend her Complaint should the Court find that dismissal is appropriate. *See, e.g.*, Dkt. 61 at ¶ 122. Where the Court dismisses a complaint for failure to state a claim, it has discretion to dismiss with or without leave to amend. *Lopez v. Smith,* 203 F.3d 1122, 1126–30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. *Id.* at 1130–31; *see also Cato v. United States,* 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (citing *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir. 1987)).

After carefully reviewing the Complaint, the Court concludes that many of Thomason's allegations are patently frivolous or incapable of being cured by amendment. However, in light of the Court's duty to liberally construe pro se complaints, and in an abundance of caution, the Court will afford Thomason 30 days to amend her Complaint to attempt to address the pleading deficiencies in any colorable claims she may have.

Such leave is granted only as to those Counts and against those properly-served defendants where dismissal was *without prejudice*. Count Three fails as a matter of law and is accordingly dismissed *with prejudice* as to all defendants. Count Two is dismissed *without prejudice* as to all defendant for failure to state a claim, under Rule 12(b)(6). Count One is dismissed *with prejudice* as to the Attorney and Financial Defendants, as Thomason's claims against these defendants are barred by res judicata and incapable of being cured. Count One is dismissed *without prejudice* as to the County Defendants, for failure to state a claim upon which relief is granted, and *without prejudice* as to the Judicial Defendants, for lack of jurisdiction under *Rooker-Feldman*. *See Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988) (a dismissal for lack of subject matter jurisdiction is without prejudice.). The Claims against Liberty Park Irrigation, Inc. and Washington Federal Savings are dismissed *without prejudice* under 12(b)(5), for insufficient service of process. *See Grigsby v. CMI Corp.,* 765 F.2d 1369, 1372 n.5 (9th Cir. 1985).

In sum, Thomason is granted leave to file an Amended Complaint as to:

1.      Count One as against the County Defendants;

2.      Count One as against the Judicial Defendants, noting that Thomason must overcome the jurisdictional deficiencies under the *Rooker-Feldman* doctrine and that any such claims may also be barred by judicial immunity and pre-requisites to injunctive and declaratory relief; and

3.     Count Two as against Beneficial Financial I, Inc., Aldridge Pite, LLP, Elisa S. Magnuson, Peter J. Salmon, and Casper J. Rankin.

## CONCLUSION

For the foregoing reasons, the Court dismisses Thomason's Complaint in its entirety. Thomason is granted thirty days to submit an amended complaint, if she wishes to do so. Once submitted, the amended complaint will be reviewed for compliance with this Order and the pleadings standards articulated by the Supreme Court in *Twombly* and *Iqbal*. Labels and legal conclusions are not a substitute for substance; Thomason must allege sufficient facts to show she is entitled to relief on each claim. The amended complaint shall be complete in and of itself, and shall not add new claims or defendants. Thomason is on notice that failure to submit an amended complaint within this timeframe will result in an order of dismissal with prejudice of all claims.

## ORDER

**IT IS ORDERED:**

1.     Defendants' Motions to Take Judicial Notice (Dkt. 32, 46) are **GRANTED**.

2.     Plaintiff's Application for Order Directing Service by U.S. Marshal and Assertion of Jurisdiction (Dkt. 26) is **DENIED**.

3.     Plaintiff's Motion for Default against Washington Federal (Dkt. 74) is **DENIED**.

4.     Plaintiff's Motion for Default against Beneficial Financial I, Inc. (Dkt. 43) is **DENIED**.

5.     Defendant Washington Federal's Motion to Dismiss for Insufficient Service of Process (Dkt. 75) is **GRANTED**. All claims against defendant Washington Federal Savings are **DISMISSED** without prejudice.

6.     Plaintiff's Motion to Strike (Dkt. 80) is **DENIED**.

7.     The Motion to Dismiss brought by defendants Lance Schuster and Beard St. Clair Gaffney (Dkt. 13) is **GRANTED**. All claims against these defendants are **DISMISSED** with prejudice.

8.     The Motion to Dismiss, brought by defendants John Bagley, Luella Bagley, River Bottom, LLC, Terrence Bagley, Elizabeth Bagley, and Bagley Enterprise (Dkt. 10) is **GRANTED**. All claims against these defendants are **DISMISSED** with prejudice.

9.     The Motion to Dismiss, brought by defendants Gregory W. Moeller, Darren B. Simpson, Jim Jones, Roger S. Burdick, Daniel T. Eismann, Joel D. Horton, Warren E. Jones, Karen L. Lansing, David W. Gratton, and Sergio A. Gutierrez (Dkt. 23) is **GRANTED**. Count One is **DISMISSED** without prejudice as to these defendants. Count Three is **DISMISSED** with prejudice as to these defendants.

10.    The Motion to Dismiss, brought by defendants Beneficial Financial I Inc., Aldridge Pite, LLP, Elisa S. Magnuson, Peter J. Salmon and Casper J. Rankin (Dkt. 30) is **GRANTED**. Counts One and Three are **DISMISSED**

with prejudice as to these defendants. Count Two is **DISMISSED** without prejudice as to these defendants.

11. The Motion to Dismiss, brought by defendants William Forsberg, Estate of Colleen Forsberg, Madison Real Property, LLC, Thomas Luthy, Laura Luthy and Abundant Land Holdings, LLC (Dkt. 44) is **GRANTED**. All claims against these defendants are **DISMISSED** with prejudice.

12. The Motion to Dismiss, brought by defendants Sherry Arnold, Suzanne Bagley and Troy Evans (Dkt. 53) is **GRANTED**. Count One is **DISMISSED** without prejudice as to these defendants. Count Three is **DISMISSED** with prejudice as to these defendants.

13. The Motion to Dismiss, brought by defendants Liberty Park Irrigation Inc., and Rigby, Andrus & Rigby, Chtd. (Dkt. 64) is **GRANTED**. All claims against these defendants are **DISMISSED** without prejudice.

DATED: January 19, 2017

B. Lynn Winmill
Chief Judge
United States District Court